IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **SCI COLLABORATION, LLC, a Florida limited liability company, NIKKI BUZZETTA, and KEN LUNA**,<br><br>        Plaintiffs,<br><br>        v.<br><br>**SPORTS CAR INTERNATIONAL, LLC, an Oregon limited liability company, and JOHN MICHIAL SHUMATE**,<br><br>        Defendants. | Case No. 3:20-cv-170-AC<br><br>**OPINION AND ORDER** |

Brian T. Kiolbasa, LANE POWELL PC, 601 SW Second Avenue, Suite 2100, Portland, Oregon 97204. Of Attorneys for Plaintiffs.

Anna Sortun, TONKON TORP LLP, 888 SW Fifth Avenue, Suite 1600 Portland, OR 97204. Of Attorneys for Defendants.

**Michael H. Simon, District Judge.**

      In this lawsuit, Plaintiffs SCI Collaboration, LLC (SCIC), Nikki Buzzetta, and Ken Luna allege a single claim of breach of contract against Defendants Sports Car International, LLC (SCI) and its member John Shumate. Although SCI answered Plaintiffs' Complaint, Shumate moved to dismiss, arguing that Plaintiffs failed to state a claim that Shumate personally can be held liable for breach of contract. United States Magistrate Judge John V. Acosta issued Findings

PAGE 1 – OPINION AND ORDER

and Recommendations (F&R) on Shumate's motion, recommending that the Court deny the motion or, alternatively, grant the motion and give Plaintiffs leave to amend. Shumate filed timely objections. For the reasons stated below, the Court adopts in part Judge Acosta's F&R, grants Shumate's motion to dismiss, and allows leave to amend.

## BACKGROUND

On March 22, 2019, SCIC, through its members Buzzetta and Luna (collectively, Plaintiffs), entered into a "Joint Collaboration Agreement" (Collaboration Agreement) with Defendants SCI and Shumate. Under the Collaboration Agreement, SCIC provided SCI with $1 million to support SCI's international business deals. Soon after, SCIC expressed concerns that SCI was misusing the funds. In July 2019, SCI repaid $250,000 of SCIC's original $1 million, but the dispute among the parties continued.

Effective December 30, 2019, SCIC, Buzzetta, and Luna entered into a "Termination and Release Agreement" (Release Agreement) with SCI and Shumate. In the Release Agreement, the parties agreed that the Collaboration Agreement "is hereby terminated." In addition, SCI agreed to pay $750,000 to SCIC within 15 business days. The Release Agreement also provided reciprocal mutual releases, as follows: SCIC, Buzzetta, and Luna (referred to in the Release Agreement as the "Group B Parties") releases SCI and Shumate (referred to in the Release Agreement as the "Group A Parties") from any and all claims and potential claims, and SCI and Shumate release SCIC, Buzzetta, and Luna from any and all claims and potential claims.

The "Payment" provision in the Release Agreement reads:

> Payment. In consideration of the releases below, the termination of the Agreement above, and other valuable considerations, the sufficiency of which is hereby confessed and agreed to, SCI shall pay $750,000 to SCIC within fifteen business days after this Agreement is executed, according to the payment instructions attached as Exhibit A.

ECF 1 at 5. Neither SCI nor Shumate, however, paid the agreed-upon $750,000, leading Plaintiffs to file this lawsuit.

In their Complaint, Plaintiffs allege a single claim of breach of contract against both SCI and Shumate. Plaintiffs contend that Defendants violated the Release Agreement by failing to pay the agreed-upon $750,000. In his motion to dismiss, Shumate argues that the Release Agreement only obligates SCI to make that payment, not him. Shumate contends that his only personal obligation was to release any and all claims and potential claims that he may have against SCIC, Buzzetta, and Luna, which he has done.

Judge Acosta recommended that the Court deny Shumate's motion to dismiss or, alternatively, give Plaintiffs leave to amend their Complaint. Judge Acosta explained that the intent of the parties is the dispositive consideration, and he found that it was reasonable to infer that Shumate signed the Release Agreement in his personal capacity to protect both himself and SCI from claims and potential claims from Plaintiffs and promised that $750,000 would be paid to Plaintiffs as consideration. Judge Acosta added that it was plausible that the parties intended jointly and severally to bind both SCI and Shumate to the payment obligation because the Release Agreement was signed by Shumate both as SCI's member and in his individual capacity.

## STANDARDS

Under the Federal Magistrates Act ("Act"), the Court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate." 28 U.S.C. § 636(b)(1). If a party files a timely objection to a magistrate judge's findings and recommendations, "the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." *Id.*; Fed. R. Civ. P. 72(b)(3).

For those portions of a magistrate judge's findings and recommendations to which neither party has objected, the Act does not prescribe any standard of review. *See Thomas v. Arn*, 474 U.S. 140, 152 (1985) ("There is no indication that Congress, in enacting [the Act], intended to require a district judge to review a magistrate's report to which no objections are filed."); *United States. v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003) (en banc) (holding that the court must review *de novo* magistrate judge's findings and recommendations if objection is made, "but not otherwise"). Although in the absence of objections no review is required, the Act "does not preclude further review by the district judge[] *sua sponte* . . . under a *de novo* or any other standard." *Thomas*, 474 U.S. at 154. Indeed, the Advisory Committee Notes to Fed. R. Civ. P. 72(b) recommend that "[w]hen no timely objection is filed," the Court review the magistrate judge's recommendations for "clear error on the face of the record."

## DISCUSSION

Two issues are currently before the Court. The first is whether the Release Agreement unambiguously excludes Shumate from any personal liability for making the $750,000 payment. The second is whether, if the Court grants Shumate's motion to dismiss, the Court should allow Plaintiffs leave to amend, notwithstanding Shumate's assertion of futility.

**A. Shumate's Alleged Personal Liability**

Shumate asks the Court to dismiss Plaintiffs' claim against him. He argues that the Release Agreement unambiguously shows that he was not personally obligated to pay the agreed-upon $750,000. Accordingly, Shumate argues, Plaintiffs have no breach of contract claim against him personally. Plaintiffs respond that Shumate should not be dismissed because the contract evinces the parties' intent to make Shumate and SCI jointly and severally liable for the $750,000 payment obligation. Because the Release Agreement refers to "Group A Parties," a defined term that includes Shumate and SCI, in some provisions, while the payment provision

only lists SCI as obligated to make the $750,000 payment, the payment provision unambiguously excludes Shumate from personal liability for that payment.

1. **Motions to Dismiss under Rule 12(b)(6)**

A motion to dismiss for failure to state a claim may be granted only when there is no cognizable legal theory to support the claim or when the complaint lacks sufficient factual allegations to state a facially plausible claim for relief. *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010). When evaluating the sufficiency of a complaint's factual allegations, the Court must accept as true all well-pleaded material facts alleged in the complaint and construe them in the light most favorable to the non-moving party. *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1140 (9th Cir. 2012). The Court may look to exhibits attached to the pleadings in evaluating the sufficiency of a complaint because exhibits to a pleading are part of the pleading for all purposes. Fed. R. Civ. P. 10(c). The Court need not accept as true allegations in the complaint that are contradicted by the text of exhibits attached to the complaint. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir.), *am. on denial of reh'g*, 275 F.3d 1187 (9th Cir. 2001).

2. **Contract Interpretation in Oregon**

Oregon law requires the Court to interpret a contract to give effect to the parties' agreed-upon intentions. *See, e.g., Connall v. Felton*, 225 Or. App. 266, 272 (2009). Oregon courts have established a three-step process for interpreting contracts. *See Yogman v. Parrott*, 325 Or. 358, 361 (1997); *Ross Dress For Less, Inc. v. Makarios-Or., LLC*, 210 F. Supp. 3d 1259, 1263 (D. Or. 2016). First, the Court must determine whether the relevant contractual provision is ambiguous. *See Apeldyn Corp. v. Eidos, LLC*, 943 F. Supp. 2d 1145, 1149 (D. Or. 2013) (citing *McKay's Mkt. of Coos Bay, Inc. v. Pickett*, 212 Or. App. 7, 12 (2007)). "In considering whether a contractual provision is ambiguous, a court is limited to considering only the plain meaning of

the words used by the parties in their contract and any extrinsic evidence showing the circumstances under which the contract was made." *Id*. (citing *Batzer Constr., Inc. v. Boyer*, 204 Or. App. 309, 314 (2006)). A contractual provision that can, "in context, reasonably be given more than one plausible interpretation," is ambiguous. *Williams v. RJ Reynolds Tobacco Co.*, 351 Or. 368, 379 (2011). The Court must, "if possible, construe the contract so as to give effect to all of its provisions." *Id*. If the provision at issue is unambiguous, the analysis ends, and a court must apply the contractual term to the facts of the case. *Ross Dress For Less*, 210 F. Supp. 3d at 1263.

When a contractual provision is ambiguous, however, the Court proceeds to the second step in the *Yogman* analysis. *Yogman*, 325 Or at 363. "At the second step, the trier of fact examines extrinsic evidence of the contracting parties' intent and construes the disputed contractual provision consistent with that intent, if such a resolution can be determined." *Ross Dress For Less*, 210 F. Supp. 3d at 1263. Because Oregon follows the objective theory of contracts, relevant evidence at step two may include manifestations of intent, including any expressions of any common understanding communicated by the parties. *Id*. Absent direct evidence of the parties' intent, a court may look to the parties' course of dealing or their performance during the term of the contract as relevant circumstantial or inferential evidence of their common understanding, if any, of the ambiguous provision. *See Apeldyn*, 943 F. Supp. 2d at 1149; *Yogman*, 325 Or. at 363-64. Absent direct or circumstantial evidence of the parties' intent, the third step under *Yogman* is to apply any relevant maxims of construction. *Id*. at 364.

When a contractual provision is ambiguous, determining its meaning at steps two and three of the *Yogman* analysis is generally a question of fact not appropriate for resolution at summary judgment. *PGF Care Ctr., Inc. v. Wolfe*, 208 Or. App. 145, 151 (2006) ("Disputes over

the meaning of a contract provision may not be disposed of by summary judgment if the provision is ambiguous."). Oregon courts have emphasized that it is not the ambiguity of a contract per se that makes summary judgment inappropriate, but that the ambiguity represents a dispute over a genuine issue of material fact. *Dial Temp. Help Serv., Inc. v. DLJ Int'l Seeds, Inc.*, 255 Or. App. 609, 611 (2013).

### 3. Application

Plaintiffs' Complaint alleges that Defendants agreed to pay $750,000. The Release Agreement is attached to the Complaint as an exhibit and expressly states that "SCI shall pay $750,000 to SCIC." To interpret the Release Agreement, the Court looks first to step one of the *Yogman* analysis. Under *Yogman* step one, the Court must determines whether a contractual provision is ambiguous by examining the plain meaning of the words used and any extrinsic evidence about the circumstances surrounding the agreement's creation. *See Apeldyn Corp.*, 943 F. Supp. at 1149.

The plain meaning of the text of the Release Agreement shows that SCI was solely liable for the payment obligation. SCI was a defined party in the Release Agreement[1] and was identified separately from Shumate. The payment provision specifically placed the payment obligation with SCI. There is no expression of any intent to bind Shumate either personally or jointly and severally with that payment obligation. The release provisions in the Release Agreement expressly provides that Group A Parties (consisting of SCI and Shumate) release the Group B Parties (consisting of SCIC, Buzzetta, and Lund) and the Group B Parties release the Group A Parties. Thus, the parties to the Release Agreement knew how to create joint and

---

[1] The Release Agreement introduced SCI as "Sports Car International LLC, an Oregon limited liability company ('SCI')."

several obligations when they wanted to do so. The parties had SCI and Shumate jointly and severally release all claims and potential claims against SCIC, Buzzetta, and Luna, but only obligated SCI to make the $750,000 payment.

Further, Plaintiffs fail to identify any term, phrase, clause, or other provision in the Release Agreement creating even an ambiguity showing that Shumate agreed to be responsible for the $750,000 payment. Plaintiffs allege that the Release Agreement was drafted, in part, because both SCI and Shumate had misused the original funds and misrepresented the status of their original business dealings. Plaintiffs argue that SCI and Shumate entered into the Release Agreement to insulate themselves from any claims or potential claims by Plaintiffs that Defendants misused those funds. That may well be the case. Plaintiffs add, however, that Shumate intended to be personally bound by the payment provision in the Release Agreement by signing the Release Agreement both as an individual and on behalf of SCI. That does not follow. Further, Plaintiffs offer no legal support for their argument that Shumate's two signatures create any ambiguity in the Release Agreement regarding the payment provision.

As previously noted, in the Release Agreement, Shumate personally released SCIC, Buzzetta, and Luna from any and all claims and potential claims that he might have against any of them. One way to document that release (and perhaps the only way) is with Shumate's signature in his personal capacity. Thus, Shumate signing the Release Agreement both on behalf of SCI and personally is entirely consistent with the Release Agreement's purposes, including the release by both sides of the transaction from any claims against the other side of the transaction. This does not show, or even create any ambiguity showing, that both SCI and Shumate intended to be jointly and severally obligated to make the $750,000 payment.

PAGE 8 – OPINION AND ORDER

Additional circumstances leading to the Release Agreement's creation support the conclusion that the payment provision is unambiguous. SCIC paid $1 million to SCI under the Collaboration Agreement, and SCI is the party that repaid $250,000 to SCIC. It is, therefore, reasonable to assume that SCI would be the party responsible for repaying the balance of $750,000. If Plaintiffs wanted to make Shumate a guarantor for SCI's payment, they could have done so, but did not. Because the Release Agreement does not contain any relevant term, phrase, clause, or other provision that is unambiguous, and no circumstances indicate any reasonable meaning other than the payment obligation belongs only to SCI, the payment obligation is unambiguous, and the Court's analysis must end at *Yogman* step one.

Plaintiffs disagree that *Yogman* controls. Instead, they rely on *Geer v. Farquhar*, 270 Or. 642, 650 (1974), a pre-*Yogman* case, for the proposition that the intent of the parties must control. In *Geer*, however, the parties conceded that the contract at issue in that case was ambiguous. *Id.* at 648. The Release Agreement here, meanwhile, is unambiguous. Further, *Yogman* establishes that intent is only to be analyzed when a contractual provision is ambiguous. Because the Release Agreement is unambiguous, *Geer* is inapposite.

Plaintiffs also argue that *Cortez v. Nacco Material Handling Group, Inc.*, 356 Or. 254 (2014), supports their argument that Shumate is personally and jointly liable, along with SCI, for making the $750,000 payment. In *Cortez* a lumber mill employee at Sun Studs, LLC was injured by a fellow employee. The injured party sued Sun Studs, LLC's sole member, Swanson Group, Inc, and Swanson's executives for negligence. *Id.* Swanson Group argued that it was immune from liability under Oregon's limited liability statute, which provides that "[a] member or manager is not personally liable for a debt, obligation or liability of the limited liability company solely by reason of being or acting as a member or manager." *Id.* at 260 (citing ORS

PAGE 9 – OPINION AND ORDER

§ 63.165(1)). The Oregon Supreme Court rejected that argument, holding that "a member or manager remains responsible for his or her acts or omissions to the extent those acts or omissions would be actionable against the member or manager if that person were acting in an individual capacity." *Id.* at 269. Beyond offering the uncontroversial proposition that an LLC cannot shield a member from liability for his own wrongful conduct, *Cortez* does not support Plaintiffs' argument.

Because the Release Agreement is unambiguous under *Yogman* step one and SCI alone is obligated under that contract for making the $750,000 payment, Plaintiffs fail to state a claim against Shumate personally under the Release Agreement. Accordingly, the Court grants Shumate's motion to dismiss.

## B.  Leave to Amend

Plaintiffs argue that, if the Court grants Shumate's motion to dismiss, the Court should give Plaintiffs leave to amend their Complaint. Shumate responds that any amendment would be futile because there is no plausible claim for breach of contract against him based on the unambiguous text of the Release Agreement. Shumate's error is in assuming that a claim of direct liability for breach of the Release Agreement is the only claim that Plaintiffs can assert against Shumate.

### 1.  Motions to Amend under Rule 15(a)(2)

Rule 15(a)(2) of the Federal Rules of Civil Procedure provides that the "court should freely give leave [to amend a pleading] when justice so requires." A district court should apply Rule 15's "policy of favoring amendments . . . with extreme liberality." *Price v. Kramer*, 200 F.3d 1237, 1250 (9th Cir. 2000) (quotation marks omitted). Leave to amend may be denied, however, if amendment would be futile or subject to immediate dismissal. *Carrico v. City & Cty. of San Francisco*, 656 F.3d 1002, 1008 (9th Cir. 2011). An amendment is futile "only if no set of

PAGE 10 – OPINION AND ORDER

facts can be proved under the amendment to the pleadings that would constitute a valid and sufficient claim or defense.'" *Barahona v. Union Pac. R.R. Co.*, 881 F.3d 1122, 1134 (9th Cir. 2018) (quoting *Sweaney v. Ada Cty*, 119 F.3d 1385, 1393 (9th Cir. 1997)); *see also Missouri ex rel. Koster v. Harris*, 847 F.3d 646, 656 (9th Cir. 2017) ("An amendment is futile when 'no set of facts can be proved under the amendment to the pleadings that would constitute a valid and sufficient claim or defense.'" (quoting *Miller v. Rykoff-Sexton, Inc.*, 845 F.2d 209, 214 (9th Cir. 1988))). The standard for assessing whether a proposed amendment is futile is the same as the standard imposed under Rule 12(b)(6) of the Federal Rules of Civil Procedure, *see, e.g.*, *Miller*, 845 F.2d at 214, although "viewed through the lens of the requirement that courts freely give leave to amend when justice so requires." *Barber v. Select Rehab., LLC*, 2019 WL 2028519, at *1 (D. Or. May 8, 2019) (quotation marks omitted).

**2.    Application**

Plaintiffs may be able to allege facts supporting one or more potential theories of recovery against Shumate personally. Plaintiffs potentially could allege that the Release Agreement is an executory accord and, because the Release Agreement's payment provision remains unperformed, Plaintiffs could bring claims, including against Shumate personally, relating to the Collaboration Agreement or even to the initial payment of $1 million more generally.[2] Alternatively, Plaintiffs potentially could allege that Shumate fraudulently induced

---

[2] Whether an unperformed subsequent agreement between parties extinguishes a prior agreement turns on whether the subsequent agreement is an accord or a substituted contract. "An accord is a contract under which an obligee promises to accept a substituted performance in future satisfaction of the obligor's duty." Restatement (Second) of Contracts § 281(1) (1981). Oregon courts often refer to these agreements as "executory accords." *See, e.g., McDowell Welding & Pipefitting v. U.S. Gypsum Co*., 345 Or. 272, 281 (2008). "A substituted contract," on the other hand, "is a contract that is itself accepted by the obligee in satisfaction of the obligor's existing duty." Restatement (Second) of Contracts § 279(1) (1981). A substituted contract extinguishes the earlier agreement regardless of whether the substituted contract was performed; an executory accord only extinguishes the earlier agreement upon performance. *McDowell*

Plaintiffs to enter into the Release Agreement by fraudulently promising that SCI would make timely payment of $750,000 but having no intention to cause SCI to do so.[3] That would permit rescission of the Release Agreement. Plaintiffs also potentially could allege that Shumate committed fraud and affirm the Release Agreement but seek damages against Shumate for what Plaintiffs were fraudulently induced to give up.[4] Finally, Plaintiffs potentially could allege that Shumate is personally liable for SCI's breach of the Release Agreement under a theory of piercing the corporate (or limited liability company) veil.[5] The Court takes no position on the merits of any of these potential claims that might be asserted by Plaintiffs against Shumate. The Court only mentions these potential theories of recovery to show that amendment is not

---

*Welding & Pipefitting*, 345 Or. at 283; Restatement (Second) of Contracts § 279 cmt. c (1981). Both are affirmative defenses. *See, e.g., Greenspan v. Newman*, 2020 WL 1250498, at *3 (D. Or. Mar. 16, 2020); *Baringa v. JP Morgan Chase & Co*. 749 F. Supp. 2d 1164, 1175 (D. Or. 2010).

[3] To state a claim for fraudulent misrepresentation against Shumate, Plaintiffs must show that Shumate promised that SCI would pay $750,000 within 15 business days, Shumate made this promise with no intent that SCI would make that payment or with reckless disregard to SCI's ability to pay, Shumate made this promise to induce Plaintiffs to sign the Release Agreement, and Plaintiffs reasonably relied on this promise with no knowledge of its falsity and were damaged as a result. *See U.S. Nat'l. Bank of Or. v. Fought*, 291 Or. 201, 221 (1981); In Oregon, a party who was fraudulently induced to enter into a contract may elect to either disaffirm the contract and sue for rescission or affirm the contract and sue for damages. *Eulrich v. Snap-On-Tools Corp.*, 121 Or. App. 25, 41 (1993), *vacated on other grounds*, 512 U.S. 1231 (1994).

[4] If Plaintiffs can show that Shumate committed fraud, then Shumate may be liable for all damages that naturally and proximately resulted from his fraud. *See Selman v. Shirley*, 161 Or. 582, 610 (1938), *adhered to on reh'g*, 161 Or. 582 (1939).

[5] To pierce a corporate veil, a plaintiff must show that: (1) a shareholder actually controlled or shared in the actual control of the corporation; (2) the shareholder engaged in improper conduct in the exercise of control over the corporation; and (3) the shareholder's improper conduct caused the plaintiff's inability to obtain an adequate remedy from the corporation. *Salem Tent & Awning Co. v. Schmidt*, 79 Or. App. 475, 481 (1986). Under Oregon law, a party can pierce the corporate veil of an LLC, even one with multiple members. *See Sterling Savings Bank v. Emerald Development*, 266 Or. App. 312, 341 (2014).

necessarily futile. It is Plaintiffs' burden to allege potential claims that are legally and factually supported, and they have leave to attempt to do so.

## CONCLUSION

The Court adopts in part Judge Acosta's Findings and Recommendations (ECF 19). The Court grants Defendant John Michial Shumate's Motion to Dismiss (ECF 7) and gives Plaintiffs leave to amend their Complaint.

**IT IS SO ORDERED**.

DATED this 5th day of November, 2020.

/s/ *Michael H. Simon*
Michael H. Simon
United States District Judge